IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KIMBERLY DEAN BRANNON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. Act. No.: 2:20-cv-623-ECM |
| | ) | (WO) |
| SWIFT TRANSPORTATION COMPANY | ) | |
| OFF ARIZONA, LLC, AND JASWANT | ) | |
| SINGH, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

Now pending before the Court are a motion for summary judgment, filed by Defendants Swift Transportation Company of Arizona LLC ("Swift") and Jawant Singh ("Singh") (doc. 36); a Motion to Exclude the Expert Testimony of Richard A. Ward and Larry Mann, filed by the Defendants (doc. 38); and a Motion to Exclude Testimony of Defendants' Expert Chris Bloomberg P.E., filed by Plaintiff Kimberly Dean Brannon ("Brannon")(doc. 41).

Brannon filed a complaint and an amended complaint in this Court. She brings claims of negligence (count I), wantonness (count II), and negligent or wanton hiring, training, supervision, and retention (count III). (Doc. 8).

Upon consideration of the briefs, evidence, and applicable law, and for the reasons that follow, the motion for summary judgment is due to be GRANTED in part and DENIED in part, the Motion to Exclude the Expert Testimony of Richard A. Ward and

Larry Mann is due to be GRANTED in part and DENIED in part, and the Motion to Exclude Testimony of Defendants' Expert Chris Bloomberg P.E. is due to be GRANTED in part and DENIED in part.

## I.  JURISDICTION

The Court can exercise subject matter jurisdiction over this dispute pursuant to 28 U.S.C. §§ 1332.  Personal jurisdiction and venue are uncontested.

## II.   LEGAL STANDARDS

### A.    Motion to Exclude Under Rule 702

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED.R.EVID. 702.

Rule 702 requires a trial judge to ensure that an expert's testimony rests on a reliable foundation and is relevant. *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579, 587 (1993).  In determining the admissibility of expert testimony under Rule 702, a court must conduct a rigorous three part inquiry, considering whether:  (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or

to determine a fact in issue. *City of Tuscaloosa v. Harcros Chems., Inc*., 158 F.3d 548, 562 (11th Cir. 1998).

### A. Motion for Summary Judgment

"Summary judgment is proper if the evidence shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (quoting FED.R.CIV. P. 56(a)). "[A] court generally must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1252 (11th Cir. 2016). However, "conclusory allegations without specific supporting facts have no probative value." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924–25 (11th Cir. 2018). If the record, taken as a whole, "could not lead a rational trier of fact to find for the non-moving party," then there is no genuine dispute as to any material fact. *Hornsby-Culpepper*, 906 F.3d at 1311 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of demonstrating that there is no genuine dispute as to any material fact, and the movant must identify the portions of the record which support this proposition. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The movant may carry this burden "by demonstrating that the nonmoving party has failed to present sufficient evidence to support an essential element of the case." *Id.* The burden then shifts to the non-moving party to establish, by going beyond the pleadings, that a genuine issue of material fact exists. *Id.* at 1311–12.

3

### III.   FACTS

The facts, taken in a light most favorable to the non-movant, are as follows:

In November 2018, Brannon walked along U.S. Highway 231 at night, heading away from Troy, Alabama.  She was walking with her back to oncoming traffic.  Brannon testified in her deposition that she was walking on the shoulder of the road, off on the right side of the white line. (Doc. 37-1 at 114: 16-20).[1]  Her tennis shoes were light in color and had some reflective properties. (Doc. 46-1).

Singh was driving an eighteen-wheeler tractor-trailer for Swift on the same highway.  As he drove, Singh was followed by two vehicles driven by Ron Sealock ("Sealock") and Kristie Reisinger ("Reisinger").   Brannon was struck by some part of the tractor-trailer driven by Singh in an area near a bridge.  Singh was driving between 62.5 and 68 miles per hour in the 30 seconds prior to the collision. (Doc. 38-3 at 137).  It is undisputed that the speed limit was 65 miles per hour.  There was patchy fog in the area of the bridge that night. (Doc. 37-3 at 131: 23–132: 3).

As a result of the collision, Brannon had injuries which required an above-the-knee amputation of her right leg.

At the scene, Singh informed an investigating officer that he swerved to avoid contacting Brannon. (Doc. 41-2).  In his deposition, Singh testified that he did not see Brannon before hearing the impact of the collision. (Doc. 37-3 at 95: 16–21).

---

[1] The Court will refer to the page numbers generated by CM/ECF.

The parties have engaged accident reconstruction experts.  Brannon's experts, Richard Ward ("Ward") and Larry Mann ("Mann"), have offered opinions as to Brannon's location and the tractor-trailer's location relative to the lanes of traffic at the time of impact. The Defendants' expert, Chris Bloomberg ("Bloomberg"), disagrees that there was sufficient physical evidence at the scene upon which to base an opinion as to the location of Brannon and the tractor-trailer at the time of the collision.  The expert reports are the subject of the motions to exclude.

## IV.    DISCUSSION

### A. Motions to Exclude

#### 1. *Motions to Exclude Opinions of Ward and Mann*

As noted, Brannon retained Mann and Ward as accident reconstruction experts.  The Defendants concede that Mann and Ward have sufficient qualifications to give expert testimony in accident reconstruction, but argue that the opinions they offer in this case lack the requisite reliability and that some are improper opinions.

##### a.   Cone of debris opinions

Mann and Ward have offered opinions that Brannon was struck from behind while on the shoulder of the road and that she was outside of the fog line at the time of impact. The Defendants argue that these opinions are not reliable because although a cone of debris analysis can be used in vehicle and pedestrian wrecks, here, Mann and Ward relied on evidence including the placement of items which may have been moved or which may not have belonged to Brannon.

Specifically as to Ward, the Defendants point out that he based his cone of debris analysis on Brannon's water bottle, a pack of cigarettes, her body, her blood, and her shoes. The Defendants argue that Ward did not consider that Reisinger, who was driving behind Singh and who stopped her vehicle at the scene, said that emergency personnel moved Brannon's items.

Brannon responds that Bloomberg, the Defendants' expert, testified in his deposition that he discounted reliance on Brannon's items at the scene because he believed that items had been moved based on Reisinger's testimony that emergency personnel gave Brannon's effects to Reisinger. (Doc. 38-5 at 28: 10–15). Brannon argues, however, that body camera footage from Brundidge Police Officer Chris Brooks reveals that he arrived on the scene before other emergency personnel and that he marked where Brannon's items were located before medical personnel arrived. (Doc. 49-1 at 21:57:57). Brannon argues that the factual issues the Defendants rely on can be explored on cross-examination.

The Eleventh Circuit's analysis in the reversal of a trial court's exclusion of an expert's testimony in *Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190 (11th Cir. 2011) applies here. In that case, the slip and fall plaintiff's theory of negligence was that a choice of flooring was unreasonable. *Id.* at 1193. The Eleventh Circuit explained that a qualified expert who uses reliable methodology can testify as to the safety of flooring through a coefficient of friction. *Id.* The court explained that slip resistance and surface friction are beyond the understanding and experience of the average citizen. *Id.* at 1194. Although the defendant argued that the expert failed to adequately test, that his conclusions were imprecise, and that his conclusions were based on an incorrect assumption about the

6

location of the plaintiff's fall, the Eleventh Circuit held that the testimony was admissible and that these arguments by the defendants attacked the weight and persuasiveness of the testimony, not its admissibility. *Id.*

In this case, at least as presented in Ward's report, Brannon's negligence theory is that Singh's truck left the road and struck her while she was on the shoulder.  Placement of Singh's truck and Brannon, therefore, are key issues for her claim.  It is apparently undisputed that analyzing a cone of debris is an acceptable methodology for analyzing the scene of a wreck.  In addition, the Court has reviewed the body camera footage and it reveals that the officer placed markers before he can be heard telling Brannon that emergency personnel have not yet arrived but are on the way. (Doc. 49-1).  Here, as in *Rosenfeld*, interpretation of the evidence is an issue beyond the experience of average citizen.  The Defendants' contentions that some debris was moved or may not have belonged to Brannon are factual issues that can be explored on cross-examination. *Rosenfeld,* 654 F.3d 1194.  Ward's opinions based on the cone of debris are not due to be excluded.

As to Mann, the Defendants seek to preclude any opinion that Singh's vehicle was over the fog line in the road, based on Mann's deposition testimony that he did not have any evidence that Singh's tires were over the fog line. (Doc. 38-4 at 85: 9–12).

Mann's opinion in the case appears to be that Singh drove within his lane of travel, but a part of the tractor-trailer protruded over the fog line.  Mann states in his deposition that he has no evidence that Singh drove over the fog line, but instead believes that something protruding from the truck struck Brannon. (*Id.*). In her brief, Brannon

7

distinguishes the opinions of her two experts, and acknowledges that Mann does not express an opinion that Singh drove outside of his travel lane, but merely that some part of the truck protruded onto the shoulder. (Doc. 46 at 2 )(setting forth that Mann "opined that an appendage from Singh's vehicle likely struck the plaintiff . . . Ward, on the other hand, opined that defendant Singh 'failed to properly maintain his lane of travel.'").

The Court has carefully reviewed Mann's expert disclosure report.  In it, he sets out an opinion that "Singh's tractor and trailer were partially outside his lane at the time of the collision." (Doc. 38-2 at 3).  That opinion is consistent with a theory that a portion of the tractor-trailer, or an "appendage," extended over the fog line even though the wheels were within the lane of travel.  However, to the extent that Mann's report expresses an opinion by Mann that Singh failed to maintain his lane of travel, it is due to be excluded as unsupported by facts, based on Mann's own deposition testimony.  The motion to exclude will, therefore, be granted to that extent.

b.  Singh's actions

The Defendants contend that Mann and Ward's opinions relating to Singh's failure to keep a proper look-out and possible actions to avoid the collision are not based on a reliable methodology.  The Defendants contend that Mann and Ward just offer conclusory opinions that Singh had time to avoid the collision with Brannon without explaining how or why they reached those opinions.  They argue that Ward and Mann only took into account the speed of 65 miles per hour and the standard industry headlight distance of 250 feet and concluded that Singh could have moved out of the way, but they did not factor in external factors, did not conduct visibility tests, or perform any other calculations.

8

Brannon responds that Mann and Ward have provided calculations of Singh's perception/reaction time and that these calculations can be tested through cross-examination.

Criticism of the factors taken into account by an expert generally go to weight, not admissibility. *See Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd*., 326 F.3d 1333, 1345–46 (11th Cir. 2003)(holding that argument that expert failed to include all available flight test parameters in his model go to the weight, not the admissibility, of the evidence he offered). Mann and Ward do not merely offer an opinion that Singh could have moved the truck over with sufficient time to avoid the collision, but instead offer an opinion, based on a calculation of Singh's speed and the low beam sight distance for commercial vehicles, that Singh had 2.5 seconds to move the truck. (Doc. 38-1 at 2 & 38-2 at 4). Arguments that they did not account for other variables are arguments which go to weight, not admissibility. Therefore, the motion to exclude is due to be DENIED as to these opinions.

c.  Evidence of speed and throttle

According to the Defendants, Mann and Ward's opinion as to the speed and amount of throttle used by Singh are unreliable because they did not account for the downhill and uphill grades on the stretch of roadway in question. The Defendants argue that Mann and Ward fail to account for the fact that the stretch of roadway in question transitions from a downhill grade to an uphill grade. The Defendants contend that counsel can advance arguments in closing based on data, and that an expert is not required to point out that 68 is a speed greater than the posted speed limit of 65.

Brannon argues in response that the speed and amount of throttle used by Singh are not controversial because the Defendants' expert, Bloomberg, agreed that the truck was traveling at speeds up to 68 miles per hour in the 30 seconds prior to the collision. (Doc. 38-5 at 65: 18–22). Bloomberg also stated in his deposition that for portions of the approach Singh used one hundred percent throttle. (Doc. 38-5 at 67: 20–68: 1). Brannon argues that it is unclear how counsel would make argument to the jury if there is no expert opinion regarding Singh's speed.

Interpretation of the speed data appears to be something that is beyond the experience of the average lay person because the data is provided at specific points in time. *See Rosenfeld*, 654 F.3d at 1194. Furthermore, evidence of Singh's speed is relied upon by the experts in offering an opinion that Singh had sufficient time to move his tractor-trailer and avoid the collision. The Defendants' arguments that Mann and Ward did not account for all variables are arguments that attack the weight and persuasiveness of the testimony, not its admissibility. *Quiet Tech. DC-8, Inc.*, 326 F.3d at 1345–46. The motion to exclude is due to be DENIED as to these opinions.

> d. Errors in the accident report

Ward's expert disclosures include some criticism of the Alabama Uniform Traffic Crash Report in this case. For example, Ward lists as a finding that the report lists the mile point of the crash as 177, but offers the opinion that the more accurate mile point is 176.9. (Doc. 38-1 at 4). The Defendants argue that the identifications of errors are not based on facts because they are merely disagreements with the office. The Defendants further argue

that opinions regarding the accuracy of the report are not helpful to the jury because the report is not admissible in court.

As will be discussed more fully below, the report itself is not admissible as an exhibit.  Criticism by the experts, therefore, of what the officer wrote or did not write in the report itself is not helpful to the jury and is due to be excluded.

> e.  Singh's violation of Federal Motor Carrier Safety Regulation (FMCSR) sec. 392.12.

The Defendants argue that it is improper for Ward and Mann to testify about the legal implications of Singh's conduct.  The Defendants cite to cases which have excluded expert opinions that a driver violated the FMCSRs. *See Montgomery v. Aetna Cas. & Surety Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990)("A witness also may not testify to the legal implications of conduct; the court must be the jury's only source of law.").

Brannon responds that she concedes that her experts cannot testify to whether Singh violated a FMCSR (doc. 49 at 8), but she contends that the experts can illuminate facts to help the factfinder decide that issue.

Upon review of the expert reports, it is clear that Ward and Mann have provided opinions that Singh violated FMCSRs. (Doc. 38-1 at 2,4 & doc. 38-2 at 5).  These opinions are due to be excluded.

> f.  Unreliable opinions

The Defendants criticize Mann's deposition as citing fog, blocked vision, and other hazards and Ward's as citing a "narrow bridge," when these opinions are stated without a

reliable methodology.   The Defendants argue that there is no objective evidence to show that any hazardous condition was encountered by Singh before the accident.

Brannon points out that Singh himself testified that there were foggy patches on the bridge as he approached it. (Doc. 37-3 at 131:  2-3).  They characterize Ward's reference to a "narrow bridge" as one of semantics.  Brannon contends that the issues the Defendants have identified go to weight, not admissibility. *See Rosenfeld*, 654 F.3d at 1193.  The Court agrees that the extent to which the weather and the bridge presented hazards are issues which can be explored on cross-examination, but do not make the experts' opinions inadmissible.

> g.   Opinions relating to the training and supervision of Singh

Opinions relating to the training and supervision of Singh are presented in the context of the claims Brannon brings for negligent and wanton hiring, training, supervision and retention.  As will be discussed below, however, the Court concludes that there is insufficient evidence from which a reasonable jury could find the threshold issue of incompetence on the part of Singh.  Therefore, evidence as to the adequacy of supervision is not relevant, and the motion to exclude is due to be GRANTED as the evidence as to adequacy of supervision.  *See Askew v. R & L Transfer, Inc*., 676 F. Supp. 2d 1298, 1304 (M.D. Ala. 2009)(finding that because no evidence in the record suggests that the driver was incompetent, the claim of negligent supervision and training fails).

> 2. *Motion to Exclude Opinions of Chris Bloomberg*

Chris Bloomberg is the Defendants' accident reconstruction expert.  He has offered a list of eleven findings and opinions. (Doc. 41-7).

Brannon does not challenge Bloomberg's qualifications, but argues that Bloomberg's testimony will not assist the jury because his methodology does not rely on scientific, technical, or specialized expertise to reach his conclusions. Brannon essentially concedes that Bloomberg's testimony is relevant to the extent that he offers an opinion that no physical evidence is available to scientifically determine whether the point of impact was within or outside of the road. (Doc. 52 at 2). But, Brannon argues, Bloomberg's reliance on witness testimony in opinions 3-9 goes too far. Brannon argues that Bloomberg only considered the eyewitness testimony of Sealock and Reisinger and did not consider the testimony of Brannon, the contradictory statements of Singh, or the testimony of the police. Brannon argues that by considering only some eyewitness testimony, Bloomberg makes a credibility determination, which is the role of the jury.

Brannon also challenges Bloomberg's findings and opinions 10-11 as being vague and equivocal. Brannon argues that Bloomberg's reliance on "rub-off marks" on the tractor-trailer as evidence of the point of impact with Brannon should not be considered because in his deposition, Brannon said that the marks "could be" from the impact.

Part of Brannon's criticism of Bloomberg stems from his deposition in that Bloomberg testified that he credited Sealock and Reisinger's testimony because they were "without a dog in the fight." (Doc. 45-5 at 83:19–84: 3). That is a credibility determination and not admissible. *See United States v. Wright,* 392 F.3d 1269, 1274 (11th Cir.2004)("Assessing the credibility of one witness is within the jury's exclusive province."). The Defendants concede this. (Doc. 45 at 14). They argue, however, with respect to Bloomberg's findings and opinions 3-6 in his report that the findings are

admissible because Bloomberg does not comment on the credibility of the witnesses in making his findings.

Upon consideration of opinions 3, 5 and 6 in the expert report, it appears to the Court that Bloomberg does not purport to offer an expert opinion that the tractor-trailer maintained its position in the lane and did not swerve. Instead, in finding 3, Bloomberg finds that "Reisinger explained that the debris items had been moved," and in findings 5 and 6, Bloomberg states that the testimony from Reisinger and Sealock "is consistent with the tractor-trailer maintaining its position in its lane and not swerving or leaving the travel lanes." (Doc. 41-7). There are simply statements of what witnesses said. Bloomberg's listed finding in 5 and 6 that a witness's testimony describing Singh's conduct "is consistent with the tractor-trailer maintaining its position in its lane," without an accompanying opinion, is just a statement that that witness's testimony is that the tractor-trailer maintained its position in its lane. Such statement is not helpful to the jury. *See United States v. Kilpatrick*, 798 F.3d 365, 380 (6th Cir. 2015) ("It is not 'helpful' when a witness, lay or expert, forms conclusions for a jury that the jurors are competent to reach on their own."). Similarly, Bloomberg finding number 3 that Reisinger "explained that the debris items had been moved from their final rest locations . . . ." is a restatement of what Reisinger said. As a restatement of her testimony, not offered as the basis of an opinion, this finding is not helpful to the jury. *See id.* The motion to exclude is, therefore, due to be GRANTED as to Bloomberg's listed findings 3, 5, and 6.

In finding 4, Bloomberg offers a conclusion based on evidence; namely, "[t]here was no physical evidence in the roadway to be able to determine if the tractor-trailer and/or

pedestrian were in the travel lands or outside of them, so witness testimony was considered." (Doc. 41-7).   As Brannon appears to concede (doc. 52 at 2), Bloomberg's opinion that there was no physical evidence in the road from which to determine if the tractor-trailer and/or pedestrian were in the travel lanes or outside of them is admissible as an opinion based on evidence.   Therefore, opinion 4 is not due to be excluded.

Bloomberg's opinions 7-9 also are based on evaluations of evidence, not restatements of witness testimony.   They are opinions are that there was no physical evidence on the front surfaces of the tractor or the mirror or protruding part of the tractor consistent with pedestrian impact.   These opinions, therefore, are not due to be excluded. *See Cameron v. Teeberry Logistics, LLC*, 2013 WL 7874709 (N.D. Ga. 2013)(finding that an expert opinion regarding accident reconstruction based on measurements was not due to be excluded even though it was inconsistent with other facts of the case and noting that the plaintiff was free to identify flawed data or facts the expert relied upon in cross-examination).

Opinions 10-11 are that the only physical evidence on the tractor-trailer that could have been a result of the impact were "rub-off" marks, and that Brannon made contact with the side of the trailer. (Doc. 41-7 at 4).   The Defendants argue that when these opinions are considered in context, it is clear that Bloomberg based the opinions on sound reasoning and analysis.   The Defendants argue that Bloomberg did not find any damage or physical evidence on the truck other than the "rub-off" marks, so those marks are the only evidence that could have been a result of the impact.

"Expert testimony is admissible which connects conditions existing later to those existing earlier provided the connection is concluded logically." *Jones v. Otis Elevator Co*., 861 F.2d 655, 662 (11th Cir. 1988). Whether a logical basis for admitting the testimony has been established is within the court's discretion, and the weaknesses in the underpinnings of the expert's opinion go to its weight rather than its admissibility. *Id.* at 663. Thus, "[o]n cross-examination, the opposing counsel is given the opportunity to ferret out the opinion's weaknesses to ensure the jury properly evaluates the testimony's weight and credibility." *Id.* Bloomberg's opinions appear to be based on logic. That is, there are no marks other than the "rub-off" marks, so those marks must indicate the point of impact. The Court concludes, therefore, that opinions 10 and 11 are not due to be excluded. Brannon is "free to identify flawed data or facts relied upon by [Bloomberg] upon cross-examination, but such reliance at this stage does not render expert testimony inadmissible under Daubert." *Cameron*, 2013 WL 7874709, at *4.

     3.   *Accident report*

Although not the subject of a separately filed motion, the Alabama Uniform Traffic Crash Report completed at the scene is subject to a request within the Defendants' brief to exclude it from consideration. (Doc. 41-2). Brannon has asked the Court to consider Singh's statements as reported in the accident report because they are in conflict with his deposition testimony.

Under Alabama law, accident reports may not be used as evidence "in any trial, civil or criminal, arising out of an accident." ALA. CODE § 32-10-11; *see Mainor v. Hayneville Tel. Co*., 715 So. 2d 800, 802 (Ala. Civ. App. 1997) ("Section 32-10-11 provides that no

Alabama Uniform Accident Report shall be used as evidence in any civil or criminal trial arising out of an accident."). The Eleventh Circuit, in an unpublished opinion, determined that the Alabama rule applied in a diversity jurisdiction case. *See Cardona v. Mason & Dixon Lines, Inc*., 737 F. App'x 978, 981-82 (11th Cir. 2018).

"The portions of a police report, however, that reflect the officer's firsthand knowledge may be admissible." *Crusoe v. Davis*, 176 So. 3d 1200, 1203 (Ala. 2015); *see also Martinez v. Espey*, 2019 WL 4409428, at *8 (N.D. Ala. 2019).  In addition, an admission within the report is admissible.  In *Dennis v. Scarborough*, 360 So. 2d 278, 279–80 (Ala. 1978), where sufficient predicate for admissibility of a statement within a police officer's report was laid, the Supreme Court of Alabama concluded that "the Defendant's out-of-court statement may be introduced into evidence."  The Court explained that "[i]t appears from the circumstances of this case that the statement constitutes an admission by the party Defendant and, as such, is admissible evidence of her negligence." *Id.*

Accordingly, while the report itself is not admissible evidence, statements within the report which are within the officer's personal knowledge or which constitute admissions are not due to be excluded.

**B.  Motion for Summary Judgment**

*1.  Negligence*

Negligence under Alabama law requires a plaintiff to prove (1) a duty to a foreseeable plaintiff, (2) a breach of that duty, (3) proximate causation, and (4) damage or injury. *Hilyer v. Fortier*, 227 So. 3d 13, 22 (Ala. 2017).

Brannon contends that there is a genuine issue of fact as to whether Brannon was in the road or on the shoulder and whether Singh maintained his lane of travel.  She points to her own testimony that she was not in the road at the time of the collision. (Doc. 37-1 at 114: 16–20).  Brannon also contends that Singh himself has created issues of fact as to the location of his tractor-trailer because at the scene Singh said that he when he "saw the person he swerved to avoid contact." (Doc. 41-2).[2] During his deposition, however, Singh testified that he did not see Brannon. (Doc. 37-3 at 95: 10–12).

Based on these disputed issues of fact, Brannon argues that summary judgment must be denied as to her negligence claim.  Brannon also relies on data downloaded from Singh's tractor-trailer to reveal that he was traveling up to 68 miles per hour in the 10 seconds before the accident and had the tractor at one hundred percent throttle. (Doc. 38-3). Brannon also relies on testimony that the weather was foggy at the time of the accident and that Singh was talking to a friend on the phone before the accident.

 The Defendants argue that the mere fact that Brannon was struck by the vehicle is insufficient to show that Singh was negligent and that it is just as likely that Brannon appeared in Singh's path too late for him to avoid the accident, based on Singh's deposition in which he testified that he did not see Brannon before hearing the impact of the collision. (Doc. 37-3 at 95: 16–21).  The Defendants cite to a case in which no evidence of negligence was found because the only evidence before the court was that the driver did not see the

---

[2]  This document is filed under seal, but the portion quoted is not a confidential statement. As discussed above, Singh's admission as recorded by the officer in the report is admissible. *See Dennis*, 360 So. 2d at 279–80.  The officer can testify to this statement as well. In his deposition he states that Singh told him he saw an object and "snatched to . . . avoid it." (Doc. 46-2 at 19).

plaintiff before impact. *See Alexander v. Annas*, 2007 WL 625905 (S.D. Ala. 2007).  The Defendants further point to the deposition testimony of Sealock who was driving behind the truck operated by Singh.  Sealock testified that he was in the middle of the lane and the truck was directly ahead of him and did not deviate from the lane of travel. (Doc. 37-4 at 13–14).

With respect to the phone call, the Court finds that there is insufficient evidence to create a question of fact as to whether Singh was distracted at the time of the accident by a phone call because the unrebutted evidence presented to the Court is that the phone call had concluded before the collision. (Doc. 37-3 at 142:22–143: 10).

There are, however, other issues of fact created which preclude summary judgment on the issue of negligence on the part of Singh, even without the conflicting expert testimony.  Under Alabama law, a driver "is negligent if he fails to discover a traveler or pedestrian whom he could have discovered in time to avoid the injury in the exercise of reasonable care . . . ." *Hawkins v. Simmons*, 295 So. 3d 683, 689 (Ala. Civ. App. 2019)(quoting *Allman v. Beam*, 130 So. 2d 194, 196-97 (1961)). The evidence that Singh told the police at the scene that he saw Brannon before the collision and Brannon's testimony that she was not in the road at the time of the collision are sufficient to distinguish this case from *Alexander* and to create a question of fact as to negligence. *See Hawkins*, 295 So. 3d at 689.  The motion for summary judgment, therefore, is due to be DENIED as to the negligence claim.

*2. Contributory Negligence*

The contributory negligence defense to a negligence claim requires a showing that a plaintiff (1) had knowledge of the dangerous condition, (2) had an appreciation of the danger under the surrounding circumstances, (3) failed to exercise reasonable care. *Hilyer*, 227 So. 3d at 23.

The Defendants argue that Brannon's own negligence is a complete defense in this case, and that summary judgment can be granted on that basis. The Defendants argue that Brannon's walking on that stretch of roadway at night without reflective clothing was dangerous. The Defendants further contend that because Brannon was walking on the right side of the southbound lane, she violated a state statute, which constitutes negligence *per se*.

Brannon responds that she was not in the road and was wearing light grey tennis shoes with "somewhat reflective material." (Doc. 46 at 1)(citing Doc. 46-1). With respect to the reflective material on the shoe, the crash scene photo is not a high-quality image, but it does appear that the shoe has reflective material, or at least is so light in color that it reflects light. The Court notes the Defendants' expert has testified only that the shoe did not "appear to have highly reflective materials like you would see on more of a running shoe." (Doc. 45-5 at 45: 17-19). The Court cannot conclude, therefore, that contributory negligence has been established as a matter of law based on that evidence.

Brannon's walking on the shoulder with her back to traffic also is not necessarily contributory negligence. The Alabama Supreme Court has explained that while the violation of a statute "designed for the protection of a person claiming to have been injured

by reason of such violation, is negligence per se . . . such conduct on the part of a pedestrian will not in itself prevent recovery on the ground of contributory negligence if the violation of the statute is not a contributing cause of the injury." *Allman*, 130 So. 2d at 196–97.

The Alabama Court of Civil Appeals has analyzed a contributory negligence defense raised circumstances similar to those in the instant case, viewed in a light most favorable to the non-movant. *See Hawkins*, 295 So. 3d at 698-99. In *Hawkins*, the plaintiff was walking on the right side of a tunnel, wearing a hot pink sweatshirt and shoes with a hot pink stripe and lime-green shoestrings, and the driver of a truck within the tunnel struck her. *Id.* at 693-95. The court explained that a motorist must exercise due care "[a]nd this is so regardless of which side [of] the highway the pedestrian or traveler is walking, whether facing oncoming traffic or with his back to traffic . . . ." *Id.* at 689. The court reasoned that the "evidence presented reasonably could have supported the conclusion that, no matter how careful [the plaintiff] had been in traveling through the tunnel in the direction she chose, the accident would have occurred and that [the driver] would not have hit her had he been exercising reasonable care as he entered and proceeded through the tunnel." *Id.* at 699.

Accordingly, this Court concludes that a sufficient question of fact has been created as to contributory negligence to preclude summary judgment on the basis of that defense.

*3.  Wantonness*

Wantonness under Alabama law is the conscious doing of some act or the omission of some duty while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result. *Ex parte Capstone Bldg.*

21

*Corp.*, 96 So. 3d 77, 84 (Ala. 2012).  To establish wantonness, a plaintiff must prove, in part, that the defendant acted with reckless indifference to the consequences.  *Hilyer*, 227 So. 3d at 24.   The Alabama Supreme Court has cited the following definitions for wantonness:

> 'Reckless' is defined as 'careless, heedless, inattentive; indifferent to consequences,' *Black's Law Dictionary* 1270 (6th ed. 1990); 'marked by lack of proper caution: careless of consequence,' *Webster's New Collegiate Dictionary* 957 (1981); 'having no regard for consequences; uncontrolled; wild.' *The American Heritage Dictionary of the English Language* 1088 (1969); *see Harrison v. State*, 37 Ala. 154 (1861).

*Id.*

Brannon points to the following as evidence which she contends creates a question of fact as to wantonness:  speed, darkness, and fog.  The evidence of speed in Ward's deposition is his analysis that the downloaded data which he explains indicates that 10 seconds before Singh applied a hard brake, he was traveling at 68 miles per hour and when he applied the brakes, he was traveling at 61.5 miles per hour. (Doc. 38-3 at 137: 12-17). Brannon points to Swift's Driver Handbook as recognizing that driving at night is more dangerous.  It is undisputed that it was dark outside.  While the Defendants dispute that there is evidence that there was fog on the roadway, Singh testified that there were patches of fog at the bridge. (Doc. 37-3 at 131: 2–132: 3).   Brannon also points to the Swift policy that drivers should reduce speed when there is reduced visibility.

Brannon relies on a decision in which the Alabama Supreme Court held that a question of fact as to wantonness can be raised by evidence of a "highly excessive speed

under hazardous conditions." *Snow v. Parrish*, 505 So. 2d 368, 370 (Ala. 1987). The evidence in this case, however, does not meet that standard. There is evidence of darkness and fog, but even accepting that darkness and fog can create a hazardous condition, the evidence of Singh's speed distinguishes the facts of this case from *Snow*. At most, Singh exceeded the posted speed limit of 65 by three miles per hour, and Brannon's own expert provides evidence that just prior to his applying the brakes, Singh's speed was reduced to 61.5 miles per hour, which was under the posted speed limit. (Doc. 38-3 at 137: 12-17). In *Snow*, the defendant was driving more than 20 miles per hour above the speed limit. 505 So. 2d at 370. "An error in driving judgment is not tantamount to 'the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result.'" *Waters v. Hall*, 2021 WL 770415, at *10 (S.D. Ala. Feb. 26, 2021). Even if the tractor-trailer went over the fog line, "Alabama courts also refuse to allow wantonness claims in automobile accident cases where a driver violated another's right-of-way or a rule of the road." *Id.* at *10 & n.6 (citing *Ex parte Anderson*, 682 So.2d 467, 470 (Ala. 1996) for the proposition that summary judgment on wantonness proper where a light rain was falling and vehicle attempting a turn on the opposite side of the intersection obstructed the defendant's view of oncoming traffic, yet defendant entered the intersection anyway). Therefore, this Court cannot conclude that Brannon has presented sufficient evidence to create a genuine issue of material fact as whether Singh, while knowing of the existing conditions, was conscious that doing or omitting to do an act would likely or probably result in injury. Summary judgment is due to be GRANTED as to the wantonness claim.

### 4. *Negligent Hiring and Training*

A claim of negligent, hiring, supervision, and retention requires a showing that the employee was incompetent and that that incompetence was the cause of the injury. *Jones Express, Inc. v. Jackson*, 86 So. 3d 298, 305 (Ala. 2010). To proceed to trial on a claim of negligent supervision, a plaintiff must produce substantial evidence that (1) the employee was negligent, (2) the negligence occurred because the employee was incompetent, (3) the employer had actual or constructive notice of the incompetence, (4) the employer failed to exercise reasonable care in supervising the employee after the point at which the employer should have known about his incompetence, and (5) the negligence of the employer was a proximate cause of the injury suffered by the plaintiff. *Id.* "[T]he incompetence of a driver is measured by the driver's demonstrated ability (or inability) to properly drive a vehicle." *Halford v. Alamo Rent-A-Car, LLC*, 921 So. 2d 409, 413–14 (Ala. 2005). The law "does not require that [a driver] have a record completely free of mistake." *See Askew v. R & L Transfer, Inc*., 676 F. Supp. 2d 1298, 1303 (M.D. Ala. 2009).

Brannon points to the following as evidence of Singh's incompetence: Singh failed his first written test, Singh was ticketed for two non-injury collisions, the DriveCam system was disabled in Singh's tractor-trailer, and Singh had not been subjected to post-accident drug/alcohol testing.

The evidence Brannon cites regarding the two non-injury accidents Singh was involved in comes from Singh's deposition. (Doc. 46 at 14). Singh explains in his deposition that in one incident his trailer hit the bumper of a truck in a parking lot while he was going five miles an hour. (Doc. 37-3 at 54: 3-8). In the second incident, while waiting

in back-to-back traffic, Singh "eased up on" his brakes and his truck hit the bumper of a car behind him, doing no damage. (*Id.* at 58: 2-21).

The Defendants argue that two non-injury accidents do not establish incompetence and that there is no evidence that any alleged incompetence caused or contributed to the accident at issue.  The Defendants argue that Swift was qualified to drive a tractor-trailer when he was hired, having attended truck driving school and obtaining his Commercial Driver's License.  The Defendants further argue that the inoperable DriveCam in the tractor driven by Swift is a red herring because there is no evidence that the DriveCam would have provided evidence of incompetence or that any incompetence caused Brannon's injuries.

Another district court has concluded that a driver who had "graduated from truck driving school, obtained a CDL, driven a commercial vehicle for about two years, and had no history of accidents involving personal injuries" was not incompetent under Alabama law. *Green v. Markovitch*, 385 F. Supp. 3d 1190, 1197 (N.D. Ala. 2019).  In that case, the plaintiff pointed to evidence that the driver had a jack-knife incident one year, a speeding violation the following year, two pre-employment traffic citations, a citation for a flat trailer tire, and two post-employment weigh station violations. *Id.*  The court reasoned that while the evidence presented showed that the driving record was not completely free of mistakes, it was insufficient to support a finding of a demonstrated inability to properly drive a vehicle. *Id.; see also Askew,* 676 F. Supp. 2d at 1303 & n.3 (driver not incompetent who damaged yard equipment while driving a tractor on company property, hit a parked vehicle, cracking its fender, hit an animal of some kind while driving, and was involved in a sideswipe accident).

25

Similarly, this Court concludes that the evidence provided by Brannon is insufficient evidence to create a question of fact as to Singh's competence as a driver. Singh was a qualified driver with two, non-injury incidents. *Id.* There is no evidence of any impairment by drugs or alcohol or that the DriveCam would have revealed incompetence. Summary judgment is due to be GRANTED as to this claim.

### 5. *Wanton Hiring and Training*

A claim of "wantonness involves a more aggravated state of mind than that required for negligent entrustment including a showing of knowledge that entrustment would likely or probably result in injury to others." *Trinidad v. Moore*, 2016 WL 4267951, at *5 (M.D. Ala. 2016)(quotation and citation omitted). When viewed in a light most favorable to the non-movant, the Court cannot conclude that a sufficient question of fact has been raised as to knowledge by Swift that entrustment of the tractor-trailer to Singh would likely or probably result in injury to others. *Id.* Summary judgment is due to be GRANTED on the wanton hiring and training claim.

## V.  CONCLUSION

For the reasons discussed, it is hereby ORDERED as follows:

1.  The motion for summary judgment (doc. 36) is DENIED as to the negligence claim and the contributory negligence defense and is GRANTED in all other respects. Judgment is entered in favor of the Defendants and against the Plaintiff on the wantonness and negligent and wanton hiring, training, supervision, and retention claims.

2.  The Motion to Exclude the Expert Testimony of Richard A. Ward and Larry Mann (doc. 38) is GRANTED to the extent, consistent with the discussion above, that Mann's report expresses an opinion by Mann that Singh failed to maintain his lane of travel, to the extent that the experts criticize the content of the Uniform Traffic Crash Report, and as to opinions that Singh violated FMCSRs.  The motion is DENIED in all other respects.

3.  The Motion to Exclude Testimony of Defendants' Expert Chris Bloomberg P.E., (doc. 41) is GRANTED as to Bloomberg's opinions 3, 5, and 6 in his report and is DENIED in all other respects.

There is apparently no dispute that Singh was acting within the line and scope of his employment with Swift. Therefore, the case will proceed on the negligence claim against both Defendants.

Done this 17th day of December, 2021.

/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE